United States District Court
Southern District of Texas
**ENTERED**
August 29, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TODRICK MORRIS, | § | |
| (TDCJ # 00854732) | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:19-cv-2396 |
| | § | |
| VS. | § | |
| | § | |
| ROBERT TANNER, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiff in this civil-rights action, Todrick Morris, is an inmate in the Texas

Department of Criminal Justice – Correctional Institutions Division (TDCJ).  Morris has

sued under 42 U.S.C. § 1983, alleging that several TDCJ officers used excessive force

against him while at the Goree Unit on February 25, 2019, and that a nurse provided him

with inadequate medical care following the use of force incident.  Morris is *pro se* and has

leave to proceed *in forma pauperis*.

Defendants Sergeant Alden Anderson, Sergeant Michael Barnett, Officer Chester

Hale, Officer Takrista Bigham, Officer Lincoln Clark, Officer Azubuik Akubueze, Officer

Roy Gross, and Officer Michael McCrerey have filed a motion for summary judgment,

seeking dismissal of the claims against them.[1]  (Docket Entry No. 48).  Morris has

---

[1] The Office of the Attorney General has submitted that a material fact issue precludes summary judgment on Morris's excessive force claim against Lieutenant Robert Tanner.  (*See* Docket Entry No. 48 at 1).

responded. (Docket Entry No. 59). Having considered the parties' briefing, the applicable law, and the record, the court grants in part and denies in part the defendants' motion for summary judgment.

## I.   <u>BACKGROUND</u>

Morris brings excessive force claims against defendants Tanner, Anderson, Barnett, Hale, Clark, Akubueze, Gross, and McCrerey in relation to a use of force incident that occurred on February 25, 2019, at the Goree Unit. He also asserts bystander liability claims against these defendants, as well as against Officer Bigham.

Morris's version of the alleged use of force differs from the defendants' version. The chronology underlying Morris's version, as summarized below, is based on his verified complaint and supplemental pleadings, (Docket Entry Nos. 1, 12, 30), as well as declarations sworn to under penalty of perjury from two inmates who witnessed the alleged use of force, (Docket Entry No. 1 at 14–15).

The chronology underlying the defendants' version, which is summarized after Morris's version, is based on TDCJ reports and Morris's medical records. The defendants have also submitted a video recording that captures some of the incident. Morris alleges that at least part of the excessive force incident occurred before the video camera was turned on. (*See* Docket Entry No. 1 at 6–8).

2

### A.    Chronology of Morris's Claims

1.    Morris's Version

On February 25, 2019, Correctional Officers Roy Gross and Michael McCrerey transported Morris from the Hughes Unit to the Goree Unit.[2]  (*See* Docket Entry No. 1 at 6; Docket Entry No. 12 at 1).  Upon arrival at the Goree Unit, Morris—who was in "hand and leg restraints and chains"—claims that the officers attempted to put him in a "filthy cell" that had no light and was flooded with "filthy water."  (*See* Docket Entry No. 1 at 6; *see also* Docket Entry No. 12 at 2).  Morris requested to speak with a supervisor about the cell conditions.  (Docket Entry No. 1 at 7).  Sergeant Anderson was then called to the scene. (*Id.*).  According to Morris, Anderson "became angry," told Morris that he was "crying like a b****," and stated that "they were about to "whip [Morris's] a**[.]"  (*Id.*).  Anderson initiated the Incident Command System, and several correctional officers and a camera operator—namely, Lieutenant Tanner, Sergeant Barnett, Officer Hale, Officer Akubueze, Officer Clark, and Officer Bigham—came onto the scene.  (*Id.*).  During this time, Morris claims that he was not "resisting in any way" and that the video camera, which was being operated by Officer Bigham, was not turned on.  (*Id.*).  Morris voiced his complaints about the cell conditions, and asserts that in response, Tanner, Anderson, and Barnett, "became angry" and told Morris that they were going to "beat [his] stupid a** punk!"  (*Id.*; *see also id.* at 15).  Morris then agreed to go into the cell and as he was walking into the cell he was

---

[2] Although Morris was initially unable to identify some of the defendants by name in his complaint, the above chronology refers to the defendants by name based on their identification in subsequently filed documents, including the *Martinez* report (Docket Entry No. 19) and an advisory filed by the Office of the Attorney General (Docket Entry No. 32).

"blind-sided" and attacked by Tanner, Anderson, Barnett, Hale, Akubueze, Clark, Gross, and McCrerey. (*Id.* at 7; *see also id.* at 14). In particular, Morris alleges that Tanner, Anderson, Barnett, Hale, Akubueze, Clark, Gross, and McCrerey slammed him onto the concrete floor (which caused him to hit his head/face on the concrete), punched him with closed fists, and kicked him several times in his face, head, and back. (*Id.* at 7; *see also id.* at 14, 15; Docket Entry No. 12 at 2). Morris states that he was not resisting during the incident. (Docket Entry No. 1 at 7; *see also id.* at 14, 15). He asserts that Lieutenant Tanner struck him four to five times on his head, left ear, and back with a riot baton, which caused him to almost lose consciousness. (*Id.* at 8; *see also id.* at 14, 15). Morris claims that after "they [had] all beat [him] for at least [three] to [four] minutes," Lieutenant Tanner instructed that the camera be turned on. (*Id.* at 8). Anderson, Barnett, Hale, Akubueze, Clark, Gross, and McCrerey then dragged Morris by his legs into the cell and removed his leg restraints. (*Id.*). According to Morris, Anderson, Barnett, Hale, Akubueze, Clark, Gross, and McCrerey, "started pulling the chain and hand restraints while I was still handcuffed[,] dragging me to the front of the cell [and] forcing me to hit my forehead on the metal door frame[,] which caused me to stumble backwards." (*Id.*; *see also id.* at 14). After Morris "stumbled," Lieutenant Tanner sprayed him in the face with chemical agents "for no justifiable reason. . . ." (*Id.* at 8; *see also id.* at 14, 15).

Once secured inside the cell, Morris's hand restraints were removed through the food slot. (*Id.* at 8). Morris states that he told Tanner and Anderson that he had several injuries to his head, face, hands, and legs, and needed medical treatment, but no medical treatment or exam was provided at that time. (*Id.*; *see also id.* at 14, 15). Morris states that

4

approximately two to three hours later, "[Tanner] has medical LVN R[obert] Scott conduct a use of force screening / assessment following the incident." (Docket Entry No. 30 at 1; *see also* Docket Entry No. 1 at 9). Scott's assessment of Morris at his cell was videotaped. (*See id.* at 9). Once Scott arrived, he asked Morris if he had any injuries, to which Morris replied "yes" and stated that he had "several injuries to [his] head, face, left ear, back, leg, and hands...." (Docket Entry No. 1 at 9; *see also* Docket Entry No. 30 at 2–3). Morris states that he was not given any medical treatment at that time for his alleged injuries, but received medical treatment when he was transferred to the Eastham Unit a couple of days later. (*See* Docket Entry No. 1 at 9).

> 2.      The Defendants' Version

Although the defendants have not submitted any affidavits or sworn statements with their motion for summary judgment, they have attached several TDCJ reports and documents relating to the incident. According to the documents submitted by the defendants, on February 25, 2019, Morris was being escorted to his assigned housing location when he refused orders to enter his cell. (*See* Docket Entry No. 48-1 at 3, 13, 15). Sergeant Anderson arrived at the scene and Morris told Anderson that he was refusing to enter the cell because he had not been given his lunch meal. (*Id.* at 13). Anderson told Morris that he would have to wait until the next meal to eat. (*Id.*). Morris continued to refuse to enter the cell, and Anderson "initiated an Incident Command System." (*Id.*). Lieutenant Tanner arrived with additional staff and Tanner assumed command of the incident. (*Id.*) According to TDCJ reports, "Tanner explained to [Morris] the consequences of his actions, [and] Morris refused to comply with orders." (*Id.* at 13; *see*

5

*also id.* at 15).  Morris then stated that he was going to remove his hand restraints and "began to move his hands side to side in an effort to remove them." (*Id.* at 13, *see also id.* at 15).  Morris was brought to the floor.[3]  The TDCJ report states that at this point, the video camera started recording. (*Id.* at 13, 15).  Morris continued to resist the TDCJ officers and Lieutenant Tanner struck Morris fifteen times with a riot baton. (*Id.* at 13, 15).

The officers then moved Morris into a cell. (*See id.* at 15).  Sergeant Anderson began to secure the cell door when "Morris became aggressive and violently pulled on the restraints and attempted to pull Officer Hale back into the cell." (*Id.*).  Lieutenant Tanner then sprayed pepper spray at Morris, and the officers were able to secure the cell and remove Morris's chain and leg restraints. (*Id.* at 15–16).  Tanner asked Morris whether he had any injuries, to which Morris replied "No." (*Id.* at 16).

Later, Scott performed a cell side medical screening on Morris. (*Id.* at 16, 19).  Morris stated that he was injured, and Scott "cleared … Morris with no visible injuries notated." (*Id.* at 16; *see also id.* at 19).  Morris was transferred to the Eastham Unit.  On March 2, 2019, a "Nursing Protocol for Musculoskeletal Symptoms" indicates that Morris was complaining of headaches, back aches, and pain in his left ankle as a result of the use

---

[3] In the documents submitted by TDCJ there appears to be conflicting accounts on how Morris was brought to the ground.  One report states that Lieutenant Tanner used his riot baton to bring Morris to the floor by striking him on the side of his right leg. (*See* Docket Entry No. 48-1 at 13).  A different report states that Sergeant Anderson attempted to use a riot baton to sweep Morris's legs out from underneath him, but that this attempt to bring Morris to ground was unsuccessful, and that "Morris was placed on the floor by Sgt. Anderson, Sgt. Barnett, and Officer Hale by using downward force …" (*Id.* at 15).

of force.  (Docket Entry No. 19-3 at 61–63).  The nurse who examined Morris on this day noted that there was a bump on top of Morris's head.  (*Id.* at 63).

### 3.    The Use of Force Video

The use of force video begins when Morris is already on the floor.  Morris is surrounded by several officers, one of whom—apparently Lieutenant Tanner—strikes Morris several times with a baton.  Morris is then carried into the cell by several officers, who then exit the cell.  One officer attempts to close the cell's door and at the point where the door is almost shut, a different officer[4]—who is holding onto handcuffs that are attached to Morris's hand restraints via a long chain—is shown being pulled towards the cell.  It is not clear from the video whether Morris deliberately tries to yank Officer Hale back into the cell as the defendants' assert or whether Morris stumbles and accidentally pulls on the chain, as he claims.  Another officer then sprays Morris with pepper spray.  Morris is eventually placed back into the cell and his hand restraints are removed.  Lieutenant Tanner asks Morris whether he has any injuries, and Morris replies "No."

Sometime later that day, Lieutenant Tanner returns to Morris's cell with Scott and Officer Bigham, who is still operating the camera.  Morris states that he has injuries, including to his left ankle, back, left hip, and wrist.  Scott is shown providing a visual examination of Morris, including, at one point, specifically instructing Morris to "let me see your ear."  Lieutenant Tanner takes several photos of Morris with a digital camera and the video ends.

---

[4] Based on the documents submitted by TDCJ, this officer appears to be Officer Hale.  (*See* Docket Entry No. 48-1 at 15).

### B.    Morris's Civil Rights Complaint

In July 2019, Morris filed a prisoner's civil rights complaint under 42 U.S.C. § 1983. At the court's request, Morris provided a more definite statement of his claims (Docket Entry No. 12) and a supplemental more definite statement of his claims (Docket Entry No. 30). In his pleadings, Morris brings Eighth Amendment excessive force claims and bystander liability claims against Tanner, Anderson, Barnett, Hale, Clark, Akubueze, Gross, and McCrerey. He brings a bystander liability claim against Bigham. And, he asserts that Robert Scott, LVN was deliberately indifferent to his medical needs. As a result of the use of force incident, Morris alleges that he sustained a bloody / busted lip, pain and swelling to his head, dizziness, pain and swelling to his left ear, face, and hands, and a back injury. (Docket Entry No. 12 at 2). Morris asserts that he continues to suffer from back pain, swelling in his feet and ankles, headaches, and that he has hearing problems and pain in his ear. (*Id.*). Morris has sued all defendants in their official and personal capacities. As relief, Morris seeks declaratory relief and compensatory and punitive damages.

At the Court's request, the Attorney General further supplemented the pleadings with a report under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987), (Docket Entry No. 19), to which Morris filed a response, (Docket Entry No. 25). After screening the pleadings and other filings pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B), the court ordered service on all of the defendants.[5] (Docket Entry No. 31).

---

[5] On May 25, 2021, the Office of the Attorney General filed a notice informing the court that it did not have authority to file responsive pleadings on behalf of defendant Robert Scott and

### C.      Defendants' Motion for Summary Judgment

The defendants have filed a motion for summary judgment, arguing that they are entitled to sovereign immunity for money damages against them in their official capacities. (Docket Entry No. 48).  They further argue that Morris's constitutional right to be free from excessive force was not violated and they have invoked the defense of qualified immunity. (*Id.*).  Morris has responded.  (Docket Entry No. 51).

## II.      <u>STANDARDS OF REVIEW</u>

### A.      Motion for Summary Judgment Under FRCP 56

Summary judgment should be granted when the moving party conclusively establishes that there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The initial burden falls on the movant to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant "may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

Once the moving party has carried its burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.  *Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996).  The nonmoving party cannot

---

provided his last known address as a healthcare staffing agency located in Dallas.  (*See* Docket Entry Nos. 33, 34).

discharge its burden by alleging legal conclusions or unsubstantiated assertions, nor can it rest on the allegations of the pleadings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Douglass v. United Servs. Auto Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* If, however, the nonmovant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Celotex*, 477 U.S. at 327. This is only so when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In the absence of proof, the court does not assume that the nonmoving party could or would prove the necessary facts at a later point. *Id.*

Although a *pro se* plaintiff's pleadings are held to a less stringent pleading standard than those drafted by attorneys and are entitled to a liberal construction, *Haines v. Kerner*, 404 U.S. 519, 521 (1972), the plaintiff must still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment. *See Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991).

## B.    Qualified Immunity

"In determining qualified immunity, courts engage in a two-step analysis. First, they asses whether a statutory or constitutional right would have been violated on the facts alleged. Second, they determine whether the defendant's actions violated clearly

10

established statutory or constitutional rights of which a reasonable person would have known." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Griggs v. Brewer*, 841 F.3d 308, 312–13 (5th Cir. 2016)).   When analyzing an excessive force claim, the second prong of the qualified immunity analysis "is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Id.* (quoting *Griggs*, 841 F.3d at 313).   "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Id.* (quoting *Griggs*, 841 F.3d at 313).   The two steps of the qualified immunity inquiry may be performed in any order.  *Pearson v. Callahan*, 555 U.S. 223 236 (2009).

### III.   ANALYSIS

#### A.   Eleventh Amendment Immunity and Official Capacity Claims

The defendants assert that they are entitled to immunity under the Eleventh Amendment as employees of TDCJ, an agency of the State of Texas.  *See* Tex. Gov't Code § 493.001 *et seq.*; *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 604 (5th Cir. 2008) (recognizing TDCJ as a state agency).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Martinez v. Tex. Dep't of Crim. Just.*, 300 F.3d 567, 575 (5th Cir. 2002).   Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when enacting 42 U.S.C. § 1983.

11

*NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).   Thus, as a state agency, TDCJ is entitled to immunity from a suit for money damages under 42 U.S.C. § 1983. *See Loya v. Tex. Dep't of Corrs.*, 878 F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ's] entitlement to immunity under the [E]leventh [A]mendment is clearly established in this circuit.") (citation omitted).   The Eleventh Amendment also bars a federal action for money damages against state officials when the state itself is the real party in interest.   *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.") (citations omitted).

Thus, to the extent Morris seeks monetary damages from any of the individual defendants in their official capacities as state employees, those claims must be dismissed as barred by the Eleventh Amendment.

### B.   Excessive Force and Bystander Liability Claims

Morris has alleged that defendants Tanner, Anderson, Barnett, Hale, Clark, Akubueze, Gross, and McCrerey used excessive force against him when they, without any provocation on Morris's part, beat him for several minutes, dragged him into his cell, and then sprayed him with pepper spray.   Because Morris, for the most part, has not been able to identify which defendants dealt exactly what blows, he has also brought bystander liability claims against Tanner, Anderson, Barnett, Hale, Bigham, Clark, Akubueze, Gross, and McCrerey.

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain …

constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Payne v.

Parnell*, 246 F. App'x 884, 886 (5th Cir. 2007) (per curiam) (quoting *Hudson v. McMillian*,

503 U.S. 1, 5 (1992)).  When a prisoner claims that a prison official's use of force violates

the Eighth Amendment's ban on cruel and unusual punishment, the "core judicial inquiry"

is "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v.

Albers*, 475 U.S. 312 (1986)).  When determining "whether unnecessary and wanton

infliction of pain was used," the court looks to five relevant factors: (1) the extent of the

injury suffered by the inmate; (2) the need for the application of force; (3) the relationship

between the need and the amount of force used; (4) the threat reasonably perceived by the

responsible officials; and (5) any efforts made to temper the severity of a forceful response.

*See Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)).  Although a *de minimis* injury

is not cognizable, "there is no categorical requirement that the physical injury be

significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.

1999).

Further, "an officer may be liable under § 1983 under a theory of bystander liability

where the officer (1) knows that a fellow officer is violating an individual's constitutional

rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."

*Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citation and internal quotation marks

omitted).

Based on the evidence, the record reflects a genuine factual dispute on each of the five excessive force factors. First, the record reflects a genuine issue as to the extent of Morris's injuries. The defendants rely on Morris responding "no" to the question of whether he had any injuries immediately following the use of force incident as support that the first factor weighs in their favor. The Court does not find Morris's answer, which was given immediately after the use of force incident and after he was sprayed with pepper spray, dispositive of the question of whether he suffered any injuries as a result of the alleged excessive force. Later that same day, Morris informed Scott during the cell-side medical examination that he had suffered injuries, including to his head, face, left ear, leg, and hands. His allegations in this suit are consistent with his statements that he gave to the nurse at the Eastman Unit, which were made within days of the alleged incident. Further, the nurse at the Eastman Unit noted that Morris had a bump on his head that he attributed to the use of force incident. The record therefore reflects a genuine issue of fact.

Next, the record reflects a genuine issue regarding whether force was necessary at the time the defendants allegedly used it, the relationship between the need and the amount of force used, whether the defendants reasonably perceived a threat, and whether the defendants tempered the force. In his pleadings, Morris alleges that defendants Tanner, Anderson, Barnett, Hale, Clark, Akubueze, Gross, and McCrerey used excessive force against him when they, without any provocation on Morris's part, beat him for several minutes, dragged him into his cell, and then sprayed him with pepper spray. Construing the facts in Morris's favor, he has raised a genuine dispute of material fact as to an Eighth

Amendment excessive force claim.  The defendants are therefore not entitled to summary

judgment on the question of whether they violated Morris's Eighth Amendment rights.[6]

Because the defendants have invoked the defense of qualified immunity, the Court

must also determine whether the defendants' conduct was objectively reasonable in light

of clearly established law.  Clearly established law holds that a prison official violates the

Eighth Amendment when the official applies force "maliciously and sadistically to cause

---

[6] In a footnote in their summary judgment motion, the defendants argue that the claims against defendants Bigham, Lincoln, Akubueze, Gross, and McCrerey should be dismissed because Morris did not state particular facts specifying the personal involvement of each of these defendants in the violation of his constitutional rights.  (*See* Docket Entry No. 48 at 11–12 & n.2). The Court is mindful that personal civil liability for constitutional torts is based solely on individual conduct, and that liability requires separate consideration of each defendants' individual actions.  *See Michalik v. Hermann*, 422 F.3d 252, 260 n.7 (5th Cir. 2005); *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007)). "But it does not necessarily follow that defendant-officers are entitled to qualified immunity when they act in concert yet the plaintiff cannot produce evidence that each defendant individually took some action that led directly to the injury." *Khan v. Lee*, CV 07-7272, 2010 WL 11509283, at *3 (E.D. La. Dec. 2, 2010), *aff'd sub. nom. Khan v. Normand*, 683 F.3d 192 (5th Cir. 2012)). Although it is true that in his original complaint Morris was not able to identify by name—besides Lieutenant Tanner and Sergeant Anderson—the TDCJ officers he alleges beat him, once the Office of the Attorney General produced discovery in this case in the form of a *Martinez* report (*see* Docket Entry No. 19), Morris responded to the report and requested that the Court replace the John Doe officers with the named defendants.  (*See* Docket Entry No. 25).  Morris has alleged that defendants Tanner, Anderson, Barnett, Hale, Akubueze, Clark, Gross, and McCrerey—as a group—beat him.  (*See* Docket No. 1 at 7).  The Fifth Circuit has held that individual officers acting as a group were not entitled to qualified immunity, even though the evidence suggested that only two of the ten officers had applied force sufficient to cause the plaintiff's injuries.  *See Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990).  Further, even if the evidence shows that certain defendants who were present did not take part in the alleged beating but that excessive force against Morris was in fact used, then those defendants may still be found liable under a theory of bystander liability.  *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 11995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."); *Khan*, 2010 WL 11509283, at *3 ("In the instant case it is undisputed that all of the Deputies were at the scene when the allegedly deadly excessive force was used against Nayeem.  As such, each of those officers either participated in applying physical force to Nayeem or was present when the force was applied and failed to intervene.  Under either scenario, the law in this circuit holds that any of the individual officers could be liable for a violation of § 1983 *if excessive force was in fact used*.").

harm" or uses force that is "wanton and unnecessary" because it is beyond that reasonably required to maintain or restore discipline. *See Hudson*, 503 U.S. at 6–7; *Payne*, 246 F. App'x at 886. Clearly established law further holds that a failure to protect an inmate from the use of excessive force by others can violate the Eighth Amendment. *See Hale*, 45 F.3d at 919. Therefore, if the defendants used physical force maliciously and sadistically to cause Morris harm or force beyond that reasonably required to maintain or restore discipline, then a reasonable officer in the defendants' situation would have known that his or her actions violated clearly established law. And, if the defendants failed to take reasonable measures to protect Morris from the use of excessive force, then a reasonable officer in the defendants' situation would have known that his or her actions violated clearly established law. Accordingly, genuine issues remain as to whether the defendants are entitled to qualified immunity.

### C.   Claims Against Remaining Defendants Robert Scott, LVN and Lieutenant Robert Tanner

#### 1.   Defendant Robert Scott, LVN

Morris has also sued Robert Scott, LVN, claiming that Scott denied him adequate medical care. The court examines whether this claim is appropriately dismissed as frivolous or for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . or fails to state a claim on which relief may be granted").

To succeed in stating a claim for inadequate medical care under § 1983, a prisoner must demonstrate "deliberate indifference" to a "serious medical need" that poses a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate that he was denied care under this standard a prisoner must show that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (explaining that whether a risk is substantial and the threatened harm is serious is an objective test, while whether the prison official consciously disregarded the risk is a subjective test) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Deliberate indifference is an "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exigent circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Domino*, 239 F.3d at 756).

In his pleadings, Morris acknowledges that Tanner told Scott to perform a medical assessment cell-side and that Scott did in fact visually inspect him at his cell after the use

of force incident. (*See* Docket Entry No. 30 at 1) (Morris stating that "[Tanner] had medical LVN R. Scott conduct a use of force screening / assessment following the incident."). Although Morris was apparently not satisfied by the care provided by Scott, his pleadings acknowledge that Scott undertook an assessment.[7]  Scott's apparent conclusion that no immediate medical attention was required does not amount to deliberate indifference. *See Matthews v. Fleming*, Civil Action No. 3:05-CV-1408-L, 2010 WL 669447, at *4 (N.D. Tex. Feb. 25, 2010) ("Disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are insufficient to support a deliberate indifference claim.") (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) and *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)); *Rosales v. Walker*, No. 1:10-CV-2402-GBC PC, 2012 WL 6570894, at *3 (E.D. Cal. Dec. 17, 2012) (holding that the defendants "were not deliberately indifferent when they gave Plaintiff a visual exam although Plaintiff insisted on having an MRI"); *Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *7 (S.D.N.Y. Feb. 11, 2015) (granting motion to dismiss deliberate indifference claim when "Plaintiff does not allege that [the doctor] completely ignored his complaint about this finger.  Rather, he alleges that she responded to his complaint by inquiring about his range of motion and conducting a visual inspection of his finger. . . .

---

[7] Although the court does not rely on the use of force video for this purpose, the video supports Morris's acknowledgement that Scott performed an examination.  The video shows Scott visually inspecting Morris as he turns around and voices his alleged injuries, and at one point Scott instructs Morris to "let me see your ear."

While Plaintiff may have hoped for a different course of treatment, the essential test is one of medical necessity and not one simply of desirability.") (cleaned up).

Accordingly, Morris's claim against Robert Scott, LVN is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state claim on which relief may be granted.

### 2. Defendant Robert Tanner

The Office of the Attorney General has stated that fact issues preclude summary judgment on Morris's claim against defendant Robert Tanner. Therefore, Morris's claims against Tanner for excessive force and bystander liability remain for adjudication.

### D. Appointment of Counsel

Morris has previously moved for appointment of counsel. (*See* Docket Entry No. 60). In its order denying Morris's request for counsel, the Court stated that it would reconsider the need for counsel should this case be scheduled for a jury trial. Under Federal Rule of Civil Procedure 54(b), a court is free to reconsider its earlier orders and decisions "for any reason it deems sufficient . . . ." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

A district court may appoint counsel for an indigent inmate where a case presents exceptional circumstances, such as a trial that "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (citations omitted); *see also Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015). Because the assistance of trained counsel will be necessary for purposes of a trial and any trial preparation, the Court

reconsiders its earlier order denying Morris's request for counsel and will now grant Morris's motion for appointment of counsel for further proceedings in this case. The Court will temporarily stay and administratively close this case until a volunteer attorney can be located and appointed as Morris's counsel of record.

## IV.   CONCLUSION

For the reasons stated above, the court **ORDERS** as follows:

1.   The motion for summary judgment filed by defendants Alden Anderson, Michael Barnett, Chester Hale, Takrista Bingham, Lincoln Clark, Azubuik Akubueze, Roy Gross, and Michael McCrery (Docket Entry No. 48) is **GRANTED in part** and **DENIED in part**. Morris's claims against Anderson, Barnett, Hale, Bingham, Clark, Akubueze, Gross, and McCrery in their official capacities are **DISMISSED** as barred by the Eleventh Amendment. In all other respects, the motion for summary judgment is denied.

2.   Morris's Eighth Amendment deliberate indifference claim against Robert Scott is **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state claim on which relief may be granted.

3.   This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until the Court locates a volunteer attorney to represent Morris. Once counsel is located, the Court will re-open this case and issue a separate order for a status conference.

The Clerk shall send a copy of this order to the parties.

SIGNED at Houston, Texas, on _____ AUG 2 6 2022 _____.

_____
ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE